1

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   IRMA CASILLAS DE MAGANA,              Case No.  1:21-cv-01288-CDB

12              Plaintiff,                 ORDER GRANTING PLAINTIFF'S MOTION
                                          FOR SUMMARY JUDGMENT AND
13        v.                              REMANDING ACTION FOR FURTHER
                                          PROCEEDINGS UNDER SENTENCE FOUR
14   COMMISSIONER OF SOCIAL               OF 42 U.S.C. § 405(g)
     SECURITY,[1]
15                                        (Doc. 14)
                Defendant.
16

17

18        Irma Casillas De Magana ("Plaintiff") seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

20   disability insurance and supplemental security income benefits under the Social Security Act.

21   (Doc. 1).  The matter currently is before the Court on the certified administrative record (Doc. 10)

22   and the parties' briefs, which were submitted without oral argument.  (Docs. 14, 20-21).[2]

23

24            [1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social
     Security Administration.  See https://www.ssa.gov/history/commissioners.html. He therefore is
25   substituted as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the
     "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the
26   Commissioner shall, in [their] official capacity, be the proper defendant.").

27
              [2]  Both parties have consented to the jurisdiction of a magistrate judge for all proceedings
28   in this action, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 9).

Plaintiff asserts the Administrative Law Judge ("ALJ") erred in her analysis on three separate issues and requests the decision of the Commissioner be vacated and the case be remanded for further proceedings including a de novo hearing and new decision.  (Doc. 14 at 10-18).

## I.    BACKGROUND

### A. Administrative Proceedings

On May 3, 2019, Plaintiff protectively filed an application for benefits pursuant to Title II and Part A of Title XVIII of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*., alleging a period of disability beginning on July 12, 2017.  (Administrative Record ("AR") 235, 238).  Plaintiff was 51 years old on the alleged disability onset date.  *Id*. at 93, 235.  Plaintiff claimed disability due to issues with her back, arthritis, and stress.  *Id*. at 254.  The Commissioner denied Plaintiff's application initially and again on reconsideration.  *Id*. at 109-24, 141-48.  Plaintiff submitted a written request for a hearing by an ALJ.  *Id*. at 149-50.  On December 9, 2020, Plaintiff, represented by counsel, appeared by telephone for a hearing before ALJ Kathryn Burgchardt.  *Id*. at 44-64.  An interpreter was present for the hearing (name not specified) and vocational expert ("VE") Mr. Purdy also testified at the hearing.  *Id*. at 43, 45, 56-61.

### B. Medical Record

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

### C. Hearing Testimony

Plaintiff testified she worked for South Valley Almond Company from 2007 to 2017.  *Id*. at 55.  Plaintiff reported she was involved in quality control and took samples of almonds to see the level of contamination and worked with several liquids.  *Id*.  Plaintiff noted she regularly had to lift 50 pounds and with assistance up to 250 pounds for her job.  *Id*. at 56.

Plaintiff stated the longest she could stand before she had to sit down was 30 minutes.  *Id*. at 62.  Plaintiff testified she could only lift and carry 20 pounds without hurting herself.  *Id*.  Plaintiff noted she always feels pain in her legs and standing and lifting increases the pain in her back and legs.  *Id*.  Plaintiff testified she is not able to assist in all of the household chores and is able to devote four hours a day to chores.  *Id*.

2

1     The VE identified Plaintiff's past work as an inspector, and grader of agricultural
2   products. *Id*. at 57.  The ALJ proffered a hypothetical to the VE of an individual with the same
3   age, education, and past work experience as Plaintiff. *Id*. at 57.  The proposed individual could
4   only lift or carry up to 25 pounds frequently, and 50 pounds occasionally, could stand or walk
5   with normal breaks for a total of six hours in an eight-hour workday, could sit with normal breaks
6   for a total of six hours in an eight-hour workday, and could perform pushing and pulling motions
7   with upper and lower extremities within the weight restrictions given. *Id*. at 57-58.  Further, the
8   individual could perform postural activities frequently, such as stooping, crouching, kneeling, and
9   crawling, and could only occasionally climb ladders, ropes, or scaffolds on the job. *Id*. at 58.
10  The VE opined that this individual could return to perform past work. *Id*.  The VE also opined
11  that the individual could perform jobs such as:  cleaner II (DOT code 919.607-014); hand
12  packager (DOT code 920.587-01); and industrial cleaner/sweeper (DOT code 389.683-010). *Id*.

13    The ALJ proffered to the VE a second hypothetical of an individual who would have the
14  same background and restrictions as provided in the first hypothetical but could only lift or carry
15  up to 10 pounds frequently, and 20 pounds occasionally. *Id*.  The VE opined that this individual
16  could not return to perform past work. *Id*. at 59.  The VE opined that this individual could work
17  as a housekeeping/cleaner (DOT code 323.6E7-Cl4), assembler (DOT code 706.687-010), food
18  service worker (DOT code 311.677-010). *Id*.

19    The ALJ proffered to the VE a third hypothetical of an individual who would have the
20  same background and restrictions as the individual in the second hypothetical, "but this individual
21  would be further restricted because this individual would be unable to consistently fulfill work for
22  eight hours a day, five days a week, in order to complete a 40-hour workweek because this
23  individual could only work less than four hours in an eight-hour workday." *Id*. at 60.  The VE
24  opined there would be no work available for that individual. *Id*.  Thereafter, Plaintiff's counsel
25  proffered a hypothetical of the same individual from the first hypothetical that would have
26  absenteeism a minimum of three days in an average month. *Id*. at 61.  The VE opined there
27  would be no work available for that individual. *Id*.

28

**D. The ALJ's Decision**

On January 14, 2021, the ALJ issued a decision finding that Plaintiff was not disabled. *Id.* at 21-36. The ALJ conducted the five-step disability analysis set forth in 20 CFR 404.1520(a). *Id.* at 22-23. The ALJ found Plaintiff had not engaged in substantial gainful activity since July 12, 2017, the alleged onset date (step one). *Id.* at 23. The ALJ held Plaintiff possessed the following severe impairments: degenerative disc disease of the cervical spine, lumbar spine, sacroiliac joints, and obesity (step two). *Id.* at 23-24.

Next, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). *Id.* at 26. The ALJ then assessed Plaintiff's residual functional capacity ("RFC"). *Id.* at 27. The ALJ found that Plaintiff retained the RFC:

> "to perform medium work as defined in 20 CFR 404.1567(c). The claimant is capable of lifting and/or carrying up to 50 pounds occasionally and up to 25 pounds frequently. She is limited to stand and/or walk for 6 hours in an 8-hour workday with normal breaks. She is limited to sit for 6 hours in an 8-hour workday with normal breaks. The claimant can perform pushing and pulling motions with his/her upper and lower extremities, within the aforementioned weight restrictions. She is limited to frequent stooping, crouching, kneeling, and crawling. The claimant is limited to occasional climbing of ladders, ropes or scaffolds."

*Id.*

The ALJ acknowledged that while Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.* at 27-31. The ALJ reported:

> "With regard to the claimant's spinal impairments, the objective medical evidence does not support her allegations of disabling symptoms. Just prior to the alleged onset date in May 2017, the claimant's cervical spine x-ray showed straightening of the normal cervical lordosis, but no evidence for fracture or substantive degenerative disc disease (Ex. 1F/1). Her thoracic spine xray was unremarkable (Ex. 1F/2). Her lumbar spine x-ray was unremarkable with no evidence of fracture

4

or spondylolisthesis, and no substantive degenerative disc disease (Ex. 1F/3). Additionally, her right shoulder and left and right wrist x-rays were unremarkable (Ex. 1F/4).

A magnetic resonance image (MRI) of her lumbar spine from November 2017 showed mild multilevel degenerative disc disease with a broad based eccentric to the left disc bulge and central annular tear at the L4-L5 level without evidence of central canal stenosis or neural foraminal impingement. There was also a broad based concentric disc bulge at the L3-L4 level without evidence for compressive discopathy, central canal stenosis or foraminal impingement (Ex. 1F/6- 7). MRI of her cervical spine showed multilevel mild central canal spondylostenosis on the basis of multilevel mild to moderate degenerative disc disease, a straightening of the normal cervical lordosis, and subligamentous disc protrusions, but no evidence of spinal cord impingement or neural foraminal stenosis (Ex. 1F/8-9).

The claimant had acupuncture/chiropractic treatments from May 2017 to August 2018 for shoulder, cervical spine, and lumbar spine pain (Ex. 3F). She reported relief from acupuncture (Ex. 2F/3). These records show restricted cervical and lumbar range of motion with pain and tenderness the palpitation and shoulder weakness (Ex. 2F/1-3, 3F/2, 3F/23, 3F/34, 3F/44-45, 3F/64, 3F/86-87, 3F/96, 3F/118-119, 15F, and 17F).

In August 2018, the claimant had a consultative examination at the request of this agency (Ex. 5F). The claimant reported a history of lumbar back pain with some occasional radiation down her left posterolateral buttock and thigh. She also reported history of neck and shoulder pain (Ex. 5F/1). However, she exhibited good mobility of the spine and all major joints. She had normal range of motion of the cervical spine and lumbar spine. Her straight leg raise was negative in the seated position and only "minimally" positive in the supine position (Ex. 5F/3-4). Her sensation, reflexes, and motor strength were intact. She was able to heel, toe, and tandem walk, walk to the room at a normal speed, and dress/undress herself without difficulty demonstrating good dexterity and flexibility in her hands and upper extremities. The claimant ambulated with normal gait without using an assistive device. Her station was normal and her Romberg test was negative consistent with good coordination and balance (Ex. 5F/2-5). She was diagnosed with an occasional musculoligamentous strain of the thoracolumbar and neck (Ex. 5F/5).

In October 2018, the claimant indicated that she injured her back and worked two years ago and was under Workmen's Compensation. She was doing physical therapy for months, which helped improve her symptoms. She was doing well until now, but her symptoms had started to come back. She reported occasional back pain that radiated her left thigh. The claimant reported that she takes ibuprofen as needed, but sometimes it does not help with the pain (Ex. 7F/3). The claimant's physical examination showed mild pain with lumbar spine range of motion testing. Her cervical spine and thoracic spine had normal inspection and normal range of motioning and she had normal gait (Ex. 7F/5). She was diagnosed with chronic midline low back pain with left sided sciatica recommended conservative management with non-steroidal anti-inflammatory (NSAIDs) medication (Ex. 7F/5-

5

6). She was prescribed Ibuprofen 800 milligrams for pain (Ex. 7F/6). Such mild findings more than a year after the alleged onset date are not consistent with disabling limitations. Later that month, she complained of phlegm (Ex. 7F/11). Her physical examination, including inspection of her neck, was normal (Ex. 7F/14).

In November 2018, the claimant's MRI showed degenerative changes resulting in moderate canal and bilateral foraminal stenosis at the L3-L4 level and mild to moderate canal and bilateral foraminal stenosis at the L4-L5 level. There was also mild canal and mild to moderate bilateral foraminal stenosis at the L2-L3 level and degenerative change involving the sacroiliac joints and perineural cysts involving the right and left S1-S3 nerve root, which were determined to be benign (Ex. 6F/3 and 9F/2). In November 2018 at her checkup, the claimant was diagnosed with lumbar radiculopathy and foraminal stenosis and spinal stenosis of the lumbosacral region and was referred to neurosurgery (Ex. 6F/10). However, she reported no (0/10) pain (Ex. 6F/9). Her physical examination indicated that she was overweight, but was otherwise unremarkable (Ex. 6F/9-10).

At her neurosurgery consultation in December 2018, the claimant was diagnosed with lumbar radiculopathy, degenerative stenosis, and rule out cervical stenosis (Ex. 6F/1). Her examination showed brisk knee reflexes that may have indicated cervical spondylosis, but was otherwise unremarkable. The claimant's range of motion was present in her arms in all directions (Ex. 6F/1). She was prescribed Decadron and Neurontin and limited to no bending, twisting, or heavy lifting over 40 pounds (Ex. 6F/1).

In April 2019, the claimant's cervical spine MRI showed mild spondylosis, mild degenerative canal stenosis and mild degenerative right foraminal stenosis at the C3-C4 and C5-C6 levels (Ex. 9F/7). In May 2019, the claimant's EMG/nerve conduction study showed electrophysiological findings consistent with mild and chronic right L5 radiculopathy (Ex. 9F/3). Also in May 2019, the claimant reported worsening low back pain with onset three days ago, consistent with waxing and waning back pain. She reported that it occurred intermittently. She reported an allergic reaction, shortness of breath and dizziness, after taking Gabapentin (Ex. 7F/38 and 18F/57-60). Her physical examination showed tenderness of the lumbar spine with moderate pain with lumbar range of motion (Ex. 18F/59). She was prescribed Naproxen and a Toradol injection (Ex. 18F/60).

At her neurosurgery follow-up in June 2019, no surgery was advised. She was recommended a cervical collar and lumbar corset. The claimant was advised to discontinue Neurontin and dexamethasone and use an over-the-counter non-steroidal anti-inflammatory agent of her choice (Ex. 9F/2 and 10F/2).

The claimant had a second consultative examination in June 2019 at the request of this agency. These records indicated that she last worked in April 2017 in quality control and cleaning and stopped when she was laid off (Ex. 11F/1). She reported that her entire back hurt more in the upper back and neck area and low back area (Ex. 11F/1). Again, the claimant had good range of motion in her spine and all major joints. She had normal range of motion in her neck and lumbar spine. Her

6

straight leg raising tests were negative bilaterally. The claimant had normal gait and normal Romberg test. She was able to stand on her toes, heels, and one leg alone. The claimant was able to squat, but only while holding onto something as she stated she could not come back up if she did not do that. The claimant did not require an assistive device. She had some tenderness of the lower neck, bilateral knee crepitus, and slightly decreased (4/5) left quadriceps. The claimant had left knee pain, but normal range of motion. She reported back pain with right hip abduction, but her range of motion was intact. Otherwise, she had normal grip strength and normal strength in her bilateral upper and lower extremities and intact sensation. She was diagnosed with back pain and neck pain (Ex. 11F/2-4).

Records from August 2019 showed supple range of motion in her neck, normal gait, and normal visual inspection of her four extremities (Ex. 13F/10-11 and 18F/48). In November 2019, the claimant had a follow-up neurosurgery visit. These records indicated that the claimant used a neck and lumbar support, which was not documented elsewhere in the record. She had decreased range of motion of the lumbar spine and cervical spine with a positive Spurling test. The claimant had about 50% decreased sensation over the left lower extremity at L5 and S1 dermatomes that was the web and the lateral sole of the feet, but otherwise was normal. She had left sided antalgic gait and tenderness of the paraverterbrals in the cervical and lumbar areas. However, the claimant had normal (5/5) motor strength in her bilateral upper and lower extremities (Ex. 14F/2). She was diagnosed with cervical and lumbar spine spondylosis and bilateral sacroiliitis and recommended continued use of the corset and cervical collar and brace exercises. She was prescribed CurcuWell or Qunol and lumbar/cervical nerve blocks (Ex. 14F/3).

A month later, in December 2019, the claimant reported back pain with onset one day ago with pain in the upper back and no radiation. Notably, the claimant reported that her symptoms were relieved by ice and over-the-counter medication (Ex. 18F/29). She was diagnosed with [a] spasm of the thoracic back and advised to use heat and stretching exercises (Ex. 18F/32). Her physical examination showed a thoracic spine muscle spasm and moderate pain with motion. However, her lumbar spine showed normal inspection and normal range of motion. There was no evidence of a gait abnormality, sensory abnormality, use of an assistive device, or use of a neck or lumbar support/brace. The claimant had no neurological deficits with normal sensation and reflexes (Ex. 18F/32).

Records from 2020 showed routine medical care and follow-up visits (Ex. 18F). In October 2020, the claimant complained of back pain since approximately 2017 and stated that she could not work and has difficulty with activities of daily living. She reported pain with bending, lifting heavy objects, and twisting and indicated that her symptoms were relieved by naproxen and rest (Ex. 18F/1). Her physical examination showed moderate pain with motion of the thoracic and lumbar spine, but normal sensation (Ex. 18F/5). She was diagnosed with chronic midline lower back pain with left sided sciatica and advised to avoid heavy lifting, bending at the knee, never twist, and to wear a back brace (Ex. 18F/6).

Additionally, the claimant is obese (Ex. 6F/10, 7F/22, and 11F). In November 2018,

she was 4 foot 11 inches tall and weighed 151 pounds, she had a Body Mass Index (BMI) of 31.58 (Ex. 6F/9). The undersigned has considered the claimant's obesity pursuant to the guidelines of SSR 19-2p. The claimant remained obese throughout the period at issue based on her physical examination findings and BMIs (Ex. 6F/9-10, 7F/8, and 18F/4). Her obesity would be expected to significantly exacerbate her back and leg pain symptoms. The claimant was counseled on diet and nutrition (Ex. 6F/11 and 18F/64-65)."

*Id.* at 28-31.   In evaluating Plaintiff's subjective complaints, the ALJ determined while it is clear that Plaintiff's symptoms cause some limitations, "the record does not establish that they are so debilitating as to preclude all gainful employment." *Id.* at 31.  The ALJ found Plaintiff sought primarily conservative and routine treatment throughout the record involving medication and chiropractic care.  *Id.*  The ALJ noted Plaintiff's diagnostic imaging shows only mild to moderate degenerative changes, with no conclusive evidence of spinal cord compression or nerve root impingement compression with antalgic gait and decreased sensation on one visit in November 2019.  *Id.*  The ALJ determined the record showed only waxing and waning back pain with occasional findings of decreased range of motion.  *Id.*

The ALJ held that in light of her findings, Plaintiff was limited to medium exertion with frequent stooping, crouching, kneeling, crawling, and occasional climbing of ladders, ropes, or scaffolds.  *Id.*  The ALJ noted Plaintiff did not show motor loss, muscle weakness, or sensory or reflex loss.  *Id.*  The ALJ found that Plaintiff did not require accommodations beyond medium exertion related to Plaintiff's subjective reports.  *Id.*

The ALJ considered the report of Birgit Siekerkotte, M.D., a consultative examiner.  *Id.* at 32.  Dr. Siekerkotte opined that Plaintiff could perform light exertion and could occasionally crouch, stoop, kneel, crawl, and climb stairs and ladders.  *Id.*  Dr. Siekerkotte determined Plaintiff "could frequently handle" but had no limitations in overhead reaching, forward, finger, and filing.  *Id.*  Dr. Siekerkotte reported Plaintiff would have some limitations working at heights and with machinery based on decreased left-sided quadriceps strength, painful lower extremity range of motion testing and mild gait balance problems.  *Id.*

The ALJ held Dr. Siekerkotte's findings were not persuasive or consistent with the record.

8

*Id.* The ALJ noted Dr. Siekerkotte based her findings on decreased quadriceps strength and difficulty using proper technique. *Id.* "However, her consultative examination showed normal gait and only mild (4/5) decreased left quadriceps strength, inconsistent with the severity of these limitations." *Id.* at 33. The ALJ found Plaintiff had back pain and decreased range of motion, but primarily normal gait, good strength, and coordination consistent with medium exertion. *Id.*

The ALJ considered the report of Robert Shannon, a family nurse practitioner ("FNP"). *Id.* at 33. FNP Shannon opined that Plaintiff could sit less than two hours and stand and/or walk less than two hours in an eight-hour workday. *Id.* FNP Shannon found Plaintiff would need 4 to 5 unscheduled breaks for one hour each due to her pain/paresthesias, and numbness. *Id.* Further, FNP Shannon determined Plaintiff could occasionally lift and/or carry 20 pounds and should rarely twist and bend and never climb stairs or ladders. *Id.* FNP Shannon concluded Plaintiff would have no manipulative limitations and "would be absent than [*sic*] four days a week." *Id.*[3]

The ALJ found that FNP Shannon's findings were not persuasive or consistent with the record. *Id.* The ALJ determined FNP Shannon based her opinion on back pain and dizziness, after seeing Plaintiff two times between October 2019 and October 2020. *Id.* The ALJ noted the opinion relied heavily on the subjective report of symptoms and limitations provided by Plaintiff, and that the opinion was an overestimation of the severity of Plaintiff's limitations and was not supported by the objective medical evidence. *Id.* Specifically, the ALJ found FNP Shannon's opinion showed:

> "only moderate pain with motion of the thoracic and lumbar spine, but normal sensation with no findings of a gait abnormality or decreased strength to support stand and/or walk less than two hours in an eight-hour workday (Ex. 18F/5). There was evidence of mild L5 radiculopathy, but this would not support a limitation to sit less than two hours in an eight hour workday. He provided no support or objective evidence to support that she would be absent four days a week. These limitations are not supported by appropriate objective medical findings of abnormality documented in the longitudinal evidence of record. These limitations are further refuted by the claimant's activities of daily living, she is able to perform simple maintenance, prepare meals, pay bills, care for children, and shop (Ex. 5E,

---

[3] The ALJ's statement in this regard appears to be a scrivener's error as the record citation the ALJ references (Exhibit 19F) documents FNP Shannon's assessment that Plaintiff would need to be absent from work more than four days per month (instead of four days per week). *See* AR 793.

1
2
3

4F, 5F, and testimony). The claimant reported being dizzy in August 2019 and a year later in September 2020. However, the record indicated that her dizziness responded well to Meclizine and her physical examinations was unremarkable for findings of dizziness or impaired balance (Ex. 13F/17-20, 18F/8, and 18F/15).

4

5

6

7

*Id*. The ALJ determined that Plaintiff was capable of performing past relevant work as an inspector/grader of agricultural products and that work did not require the performance of work-related activities precluded by Plaintiff's RFC.  *Id*. at 34.  The ALJ concluded Plaintiff has not been under a disability as defined in the Act.  *Id*. at 36.

8

9

10

11

12

13

On June 23, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  *Id*. at 6-8.  Plaintiff filed this action on August 24, 2021, seeking judicial review of the denial of his application for benefits.  (Doc. 1). The Commissioner lodged the administrative record on March 7, 2022.  (Doc. 10).  Plaintiff filed an opening brief on June 24, 2022.  (Doc. 14).  On October 12, 2022, Defendant filed a responsive brief and Plaintiff filed a reply on October 27, 2022.  (Docs. 20-21).

14

## II.  LEGAL STANDARD

15

### A. The Disability Standard

16

17

18

19

20

21

22

23

24

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a).  An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[4]  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled.  *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). Specifically, the ALJ is required to determine:

25

26

27

28

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

(1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on a claimant at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

Before making the step four determinations, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is the most a claimant can still do despite their limitations and represents an assessment based on all relevant evidence.  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. § 416.920(e); § 416.945(a)(2).  *E.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe.").  The RFC is not a medical opinion.  20 C.F.R. § 404.1527(d)(2).  Rather, it is a legal decision that is expressly reserved to the Commissioner.  20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education, and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  To do this, the ALJ can use either the Medical-Vocational Guidelines or rely upon the testimony of a VE.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities.'"  *Ford*, 950

1      F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

2            **B. Standard of Review**

3            Congress has provided that an individual may obtain judicial review of any final decision

4      of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

5      determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the

6      party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  A

7      court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on

8      legal error or are not supported by substantial evidence.  *Tackett v. Apfel*, 180 F.3d 1094, 1097

9      (9th Cir. 1999).

10         "Substantial evidence is relevant evidence which, considering the record as a whole, a

11     reasonable person might accept as adequate to support a conclusion."  *Thomas v. Barnhart*, 278

12     F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

13     1457 (9th Cir, 1995)).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v.*

14     *Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Rather, "[s]ubstantial evidence means more than a

15     scintilla, but less than a preponderance; it is an extremely deferential standard."  *Thomas v.*

16     *CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

17         "[A] reviewing court must consider the entire record as a whole and may not affirm

18     simply by isolating a specific quantum of supporting evidence."  *Hill v. Astrue*, 698 F.3d 1153,

19     1159 (9th Cir. 2012) (internal quotations and citations omitted).  "If the evidence 'is susceptible

20     to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'"  *Ford*,

21     950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  Even if the

22     ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  *Stout*,

23     454 F.3d at 1055-56.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

24     nondisability determinations."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)

25     (quotation and citation omitted). The burden of showing that an error is not harmless "normally

26     falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396,

27     409 (2009).

28

1

### III.     LEGAL ISSUES

2        Plaintiff asserts the ALJ "failed to acknowledge to articulate any consideration of the

3    opinion from Dr. Vanderhyde." (Doc. 14 at 10).  Plaintiff claims the ALJ erred by finding the

4    opinions from Dr. Siekerkotte and FNP Shannon not persuasive without proper consideration of

5    the supportability and consistency of the opinions with the record.  *Id.*  Separately, Plaintiff

6    contends the ALJ failed to include work-related limitations in the RFC consistent with the nature

7    and intensity of Plaintiff's limitations and failed to offer clear and convincing reasons for

8    rejecting Plaintiff's subjective complaints.  *Id.*

9

### IV.     DISCUSSION

10   **A.      Whether the ALJ Erred by Failing to Consider Dr. Vanderhyde's Opinion**

11   1.  Dr. Vanderhyde's Opinion

12       From May 4, 2017, to August 20, 2018, Plaintiff was seen by Dr. Nicholas G. Vanderhyde

13   for treatment.  AR at 382-527.  Dr. Vanderhyde noted Plaintiff complained of pain in her cervical

14   spine, thoracic spine, lumbar spine, right shoulder, right wrist, left hand, and of psychological

15   issues.  Dr. Vanderhyde diagnosed Plaintiff with a sprain of ligaments in her cervical spine,

16   thoracic spine, and lumbar spine, unspecified muscles, right wrist, as well as major depressive

17   disorder single episode, anxiety, nervousness, restlessness, and agitation.  Dr. Vanderhyde

18   provided objective findings regarding Plaintiff's cervical spine, thoracic spine, lumbar spine, right

19   shoulder, right wrist, left hand, and psychological issues and recommended a treatment plan.  *Id.*

20       From June 1, 2017, to June 20, 2018, Dr. Vanderhyde opined Plaintiff "Remain off-

21   work." *Id.* at 394, 403, 406, 409, 427, 441-42,456, 469, 486, 501.  On July 31, 2018, Dr.

22   Vanderhyde opined Plaintiff could return to modified work with limitations and/or restrictions.

23   *Id.* at 520.  Specifically, Dr. Vanderhyde recommended "[n]o lifting or carrying more than 20 lbs.

24   No repetitive forceful activities with right upper extremities.  If modified work is not available

25   then [the] patient remains temporarily totally disabled pending my reevaluation." *Id.*

26   2.  Discussion

27       Plaintiff asserts the ALJ's determination that Plaintiff had an RFC to perform a range of

28   medium work was not supported by substantial evidence. (Doc. 14 at 10-11).  Specifically,

Plaintiff argues the ALJ erroneously rejected Dr. Vanderhyde's opinion, despite being required to evaluate every medical opinion received.  *Id*. at 11.  Plaintiff contends the ALJ's failure to acknowledge or consider the persuasiveness of this opinion is legal error and requires remand.  *Id*.

Defendant argues "[l]ooking to the pages Plaintiff cites, Dr. Vanderhyde did not provide the work restrictions Plaintiff alleges. Rather, the doctor opined that Plaintiff 'Remain off-work.'" (Doc. 20 at 6).  Defendant argues this opinion as to Plaintiff's ultimate ability to work is an issue reserved for the Commissioner and the ALJ did not err.  *Id*.

A physician's opinion on the ultimate issue of disability is not entitled to controlling weight, because statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not medical opinions" under the Regulations.  20 C.F.R. §§ 404.1527(e), 416.927(e).  Rather, an ALJ "is precluded from giving any special significance to the source; e.g., giving a treating source's opinion controlling weight" when it is on an issue reserved to the Commissioner, such as the ultimate issue of disability.  Social Security Ruling 96-5p, 1996 WL 374183, at *3 (July 2, 1996); *see McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[t]he law reserves the disability determination to the Commissioner"); *Martinez v. Astrue*, 261 Fed. Appx. 33, 35 (9th Cir. 2007) ("[T]he opinion that [a claimant] is unable to work is not a medical opinion, but is an opinion about an issue reserved to the Commissioner.  It is therefore not accorded the weight of a medical opinion").

The ALJ was entitled to reject the conclusion of Dr. Vanderhyde that Defendant "Remain off-work."  However, an ALJ may not reject work-related limitations simply on the grounds that a source also addressed the ultimate issue.  "To be *very clear*, rejecting the ultimate conclusion concerning disability and rejecting findings concerning work-related limitations are two vastly different propositions that should not be conflated."  *Neves v. Comm'r of Soc. Sec. Admin*, No. 1:15-cv-01194-EPG, 2017 WL 1079754, at *6 (E.D. Cal. Mar. 21, 2017) (emphasis in original).  Here, the ALJ did not address the functional limitations identified by Dr. Vanderhyde on July 31, 2018.  Thus, the ALJ erred by failing to address the functional limitations proposed by Dr. Vanderhyde and did not identify germane reasons for rejecting said limitations.  *Saucedo v. Colvin*, No. CV 13-0799-JPR, 2014 WL 4407616, at *6 (C.D. Cal. Sept. 8, 2014) ("the ALJ

14

1   omitted mention of the treating physicians' opinions almost entirely, making it unclear whether

2   and to what extent he considered them. … That was error.") (citing *inter alia Lingenfelter v.*

3   *Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) (finding error when ALJ "only briefly

4   mentioned" one treating physician and "did not acknowledge" another "at all")).

5       **B.      Whether the ALJ Erred by Finding the Opinions from Dr. Siekerkotte and**

6              **FNP Shannon Not Persuasive**

7       Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the

8   agency's new regulations governing how an ALJ must evaluate medical opinions.  20 C.F.R. §

9   416.920c.  Under the new regulations, the Commissioner does "not defer or give any specific

10  evidentiary weight, including controlling weight, to any medical opinion(s) or prior

11  administrative medical findings (s), including those from [a claimant's] medical sources."  20

12  C.F.R. §§ 404.1520c(a), 416.920c(a).  Thus, the new regulations require an ALJ to apply the

13  same factors to all medical sources when considering medical opinions and no longer mandate

14  particularized procedures that the ALJ must follow in considering opinions from treating sources.

15  *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each

16  medical opinion or prior administrative medical finding from one medical source individually.");

17  *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

18      Instead, "[w]hen a medical source provides one or more medical opinions or prior

19  administrative medical findings, [the ALJ] will consider those medical opinions or prior

20  administrative medical findings from that medical source together using" the following factors:

21  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5)

22  other factors that "tend to support or contradict a medical opinion or prior administrative medical

23  finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)-(5).  The most important factors to be applied in

24  evaluating the persuasiveness of medical opinions and prior administrative medical findings are

25  supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability

26  factor, the regulation provides that the "more relevant the objective medical evidence and

27  supporting explanations presented by a medical source are to support his or her medical

28  opinion(s), the more persuasive the medical opinions ... will be."  20 C.F.R. § 404.1520c(c)(1).

Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792-93 (9th Cir. 2022).

1. Dr. Siekerkotte's Opinion

On June 14, 2019, Plaintiff attended a consultive examination with Dr. Siekerkotte. AR at 633. Dr. Siekerkotte reported Plaintiff complained of back pain and neck pain. *Id*. Dr. Siekerkotte reviewed Plaintiff's medical records, history, medications, and activities of daily living. *Id*. at 633-34.

Thereafter, Dr. Siekerkotte conducted a physical examination of Plaintiff. *Id*. at 634-36. Dr. Siekerkotte noted Plaintiff appeared as a well-developed, well-nourished female in no acute distress. *Id*. at 634. Dr. Siekerkotte found Plaintiff's neck/nodes were supple without adenopathy, thyromegaly, or masses, and that there were no palpable cervical, supraclavicular, epitrochlear, or axillary lymph nodes. *Id*. Dr. Siekerkotte determined Plaintiff's coordination/station/gait was normal with normal Romberg testing. *Id*. at 635. According to Dr. Siekerkotte, Plaintiff was able to stand on her toes, heels, and one leg alone and could squat only while holding onto something and "she could not come back up [if] she did not do that." *Id*. Dr. Siekerkotte noted Plaintiff had no ambulatory device. *Id*.

Dr. Siekerkotte reviewed Plaintiff's range of motion. *Id*. Specifically, Dr. Siekerkotte

1    noted Plaintiff's cervical region had a flexion of 0-50 degrees, extension of 0-60 degrees, lateral

2    flexion 0-45 degrees, and a rotation of 0-80 degrees bilaterally.  *Id*.  Plaintiff's lumbar region had

3    a flexion of 0-90 degrees, extension of 0-25 degrees, and a lateral flexion of 0-25 degrees

4    bilaterally.  *Id*.  Plaintiff's hip had a forward flexion of 0-100 degrees, backward extension of 0-

5    30 degrees, rotation-internal of 0-40 degrees, rotation-external of 0-50 degrees, abduction of 0-40

6    degrees, adduction of 0-20 degrees, and "[o]n the right the [Plaintiff] gets low back pain with

7    abduction."  *Id*.  Plaintiff's knee had an extension of zero degrees, a flexion of 150 degrees, and

8    her left knee hurts laterally with range-of-motion testing.  *Id*.  Plaintiff's shoulder had a forward

9    flexion of 0-150 degrees, extension of 0-40 degrees, abduction of 0-150 degrees, adduction of 0-

10   30 degrees, internal rotation of 0-80 degrees, and external rotation of 0-90 degrees bilaterally.  *Id*.

11       Dr. Siekerkotte found Plaintiff's straight leg raising was negative bilaterally in the seated

12   and supine positions.  *Id*. at 636.  Dr. Siekerkotte noted Plaintiff had tenderness in the lower neck

13   area and had bilateral knee crepitus.  *Id*.  Dr. Siekerkotte determined Plaintiff had the following

14   motor strength/muscle bulk and tone: "[g]rip strength, biceps shoulders, and foot dorsiflexion,

15   plantarflexion bilaterally 5/5, left quadriceps 4+/5, right quadriceps 5/5."  *Id*.  Dr. Siekerkotte

16   diagnosed Plaintiff with back pain and neck pain.  *Id*.

17       Dr. Siekerkotte issued a functional assessment of Plaintiff.  *Id*.  Dr. Siekerkotte

18   determined Plaintiff had a maximum standing/walking capacity of up to six hours, no maximum

19   sitting capacity limitation, and needed no ambulatory device.  *Id*.  Dr. Siekerkotte assessed

20   Plaintiff's maximum lifting and carrying is 20 pounds occasionally and 10 pounds frequently

21   based on Plaintiff's decreased quadriceps strength and difficulty in using proper technique.  *Id*.

22   Dr. Siekerkotte reported Plaintiff could occasionally climb stairs and ladders, balance frequently,

23   crouch occasionally, stoop occasionally, and kneel and crawl occasionally.  *Id*.  Dr. Siekerkotte

24   based these limitations on decreased left-sided quadriceps strength, painful lower extremity

25   range-of-motion testing, and mild gait balance problems.  *Id*.  Dr. Siekerkotte determined Plaintiff

26   could handle things frequently, reach overhead, forward, finger, and filing with no limitations.

27   *Id*.  Dr. Siekerkotte found Plaintiff could work at heights with machinery with some limitations.

28   *Id*.  Again, Dr. Siekerkotte based these limitations on Plaintiff's decreased left-sided quadriceps

1   strength, the painful lower extremity range-of-motion testing, and mild gait balance problems.  *Id.*

2          The ALJ found Dr. Siekerkotte's physical exam findings did not support Dr. Siekerkotte's

3   proffered limitations.  Dr. Siekerkotte based her limitations on Plaintiff's decreased quadriceps

4   strength, difficulty in using proper technique, her painful lower extremity range-of motion testing,

5   and mild gait balance problems.  AR at 636.  In reviewing the physical exam findings, the ALJ

6   highlighted Dr. Siekerkotte's findings that she possessed a normal gait and had only a "mild"

7   decrease (4+/5) in one quadricep (left).  By comparing Dr. Siekerkotte's physical examination

8   findings with Dr. Siekerkotte's opined limitations, the ALJ appropriately addressed the

9   supportability factor.

10          Plaintiff claims the ALJ's discussion of the supportability factor is inadequate because the

11   ALJ failed to address all of Dr. Siekerkotte's observations.  Plaintiff notes some favorable notes

12   and findings in Dr. Siekerkotte's opinion that "Plaintiff could only squat while holding onto

13   something, there was pain with range of motion in the right hip and left knee, there was

14   tenderness in the lower neck, and crepitus in the bilateral knees."  (Doc. 14 at 11).  But Plaintiff

15   fails to address and/or reconcile these observations with the relevant and less favorable portions

16   of Dr. Siekerkotte's findings.  In reviewing Dr. Siekerkotte's opinion, it does not appear that the

17   ALJ mischaracterized the opinion but instead highlighted the discrepancies in her findings and

18   limitations discussed above.

19           Next, Plaintiff claims the ALJ "vaguely asserted that the record showed normal gait,

20   strength, and coordination, 'consistent with medium exertion'" and this "isolated discussion of

21   normal findings" was not representative of the overall record.  (Doc. 14 at 13-14).  Thereafter,

22   Plaintiff cites medical records from Drs. Vanderhyde, Rahimifar, and Physician Assistant,

23   Certified ("PA-C") Kauer to argue that the ALJ failed "to explain how they were considered in

24   weighing Dr. Siekerkotte's opinion."  *Id*. at 14.  Specifically, Plaintiff claims Dr. Vanderhyde's

25   records showed "pain with range of motion of the thoracic spine and muscle spasm of the thoracic

26   paravertebral muscles, decreased range of motion, pain, and tenderness in the lumbar spine, pain

27   with range of motion of the right wrist with muscle spasm in the forearm, and pain with Tinel's,

28   Phalen's, and Finkelstein's signs."  *Id*. (citing AR at 353, 383-84, 440, 454, 468, 484, 500, 518).

Plaintiff further notes that "Dr. Rahimifar observed decreased range of motion in the neck, positive spurling's test, antalgic gait, decreased sensation in the left lower extremity, and tenderness along all cervical and paravertebral muscles." *Id*. (citing AR at 673). "PA-C Kauer observed muscle spasms and painful range of motion in the thoracic spine." *Id*. (citing AR at 756-57).

Plaintiff correctly argues that the ALJ may not cherry-pick evidence in evaluating a medical opinion. *Buethe v. Comm'r of Soc. Sec.*, No. 2:20-cv-552-KJN, 2021 WL 1966202, at *4 (E.D. Cal. May 17, 2021); *see Cruz v. Kijakazi*, No. 1:21-cv-01248-AWI-HBK, 2023 WL 1447855, at *5 (E.D. Cal. Feb. 1, 2023) ("Even under the new regulations, the ALJ may not 'cherry-pick' evidence in discounting a medical opinion."). When district courts have analyzed arguments regarding cherry-picking, they have examined whether the ALJ appropriately reviewed the record as a whole. *E.g., Cruz*, 2023 WL 1447855, at *5 ("when viewing the medical record as a whole, it was reasonable for the ALJ to conclude that the severity of limitations assessed by Ms. Vang and Dr. Atmajian's opinions were not consistent with objective medical evidence in the record.").

As discussed above, the ALJ determined Plaintiff "was noted to have *back pain and decreased range of motion*, but primarily normal gait, good strength, and coordination consistent with medium exertion." AR at 33 (citing *id*. at 536-39, 562, 633, 650-51, 673, 729) (emphasis added). Thus, the ALJ did not ignore Plaintiff's pain and decreased range of motion identified by Drs. Vanderhyde, Rahimifar, and PA-C Kauer. The ALJ was aware of the records cited by Plaintiff and acknowledged evidence that could be considered more favorable to Plaintiff throughout the opinion. In fact, the ALJ explicitly cited Dr. Rahimifar and PA-C Kauer's treating records in the paragraph discounting Dr. Siekerkotte's opinion. *Id*. at 33.

The ALJ's citation to normal findings for gait, good strength, and coordination consistent with medium exertion (*id*.) directly contrasts with Dr. Siekerkotte's proposed limitations. When viewing the medical record as a whole, it was reasonable for the ALJ to conclude that the severity of limitations assessed by Dr. Siekerkotte was inconsistent with the broader record. To the extent Plaintiff suggests an alternative interpretation of the evidence, that is not sufficient to establish

1   reversible error.  *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one

2   rational interpretation, it is the ALJ's conclusion that must be upheld.").  Therefore, the ALJ's

3   finding that Dr. Siekerkotte's opinion was not persuasive is supported by substantial evidence

4   after proper consideration of the supportability and consistency factors.

5      2.   FNP Shannon's Opinion

6      On August 22, 2019, Plaintiff saw FNP Shannon for dizziness and chest pain.  AR at 762-

7   67.  FNP Shannon advised Plaintiff to avoid heavy lifting, bend at the knees, never twist, wear a

8   back brace, and consider chiropractor, physical therapy, and pain management.  *Id*. at 766.  On

9   October 14, 2020, Plaintiff saw FNP Shannon for back pain.  AR. at 725-31.  FNP Shannon

10  reported Plaintiff complained of back pain since 2017, could not work, and had difficulties with

11  activities of daily living.  *Id*. at 725.  FNP Shannon noted the "[s]everity level is moderate-

12  severe."  *Id*.  FNP Shannon noted Plaintiff's back pain was worsening and it occurred persistently

13  in her lower back.  *Id*.  Plaintiff "described the pain as an ache and sharp.  Context: bending

14  forward, bending over, lifting a heavy object[,] and twisting movement."  *Id*.  FNP Shannon

15  reported the symptoms are aggravated by bending, daily activities, extension, flexion, and

16  walking and were relieved by over-the-counter medication.  *Id*.

17     FNP Shannon determined Plaintiff was positive for back pain, joint pain, and muscle

18  weakness.  *Id*. at 728.  FNP Shannon identified Plaintiff's thoracic spine had "moderate pain

19  w/motion Lumbar spine—Range of motion moderate pain w/motion."  *Id*. at 729.  FNP Shannon

20  assessed Plaintiff with chronic midline low back pain with left-sided sciatica (M54.42), foraminal

21  stenosis of the lumbosacral region (M48.07), spinal stenosis of lumbar region without neurogenic

22  claudication (M48.061), and lumbar radiculopathy (M54.16).  *Id*. at 730.  FNP Shannon provided

23  the same assessment plan from the August 2019 visit.  *Id*.

24     On October 20, 2020, FNP Shannon issued a medical source statement for Plaintiff's back

25  pain.  *Id*. at 790-94.  FNP Shannon reported he had treated Plaintiff twice regarding Plaintiff's

26  back pain and dizziness.  *Id*. at 791.  FNP Shannon found Plaintiff had pain due to degenerative

27  changes in her mid-to-low back.  *Id*.  FNP Shannon noted Plaintiff had pain twisting, extension,

28  issues with her flexion, and was able to work short distances.  *Id*.  FNP Shannon determined

1    Plaintiff takes anti-inflammatories, a muscle relaxer, and had been referred to a spine specialist.

2    *Id*.

3          FNP Shannon found Plaintiff could walk two city blocks without rest or severe pain.  *Id*.

4    FNP Shannon determined Plaintiff could only sit for 15 minutes at a time for more than 2 hours

5    and could only stand for 30 minutes more than 2 hours.  *Id*. at 792.  FNP Shannon recommended

6    Plaintiff could sit and stand/walk for less than 2 hours total in an 8-hour working day (with

7    normal breaks).  *Id*.  FNP Shannon found Plaintiff needs a job that permits shifting positions at

8    will from sitting, standing, or walking, and will need to take unscheduled one-hour (on average)

9    breaks four to five times a day.  *Id*.  FNP Shannon determined Plaintiff could occasionally lift and

10   carry 20 lbs, twist and stoop (bend) rarely, and never climb stairs or ladders.  *Id*. at 793.  FNP

11   Shannon noted Plaintiff's impairments were likely to produce good days and bad days and that

12   she would have to be absent from work more than four days per month.  *Id*.

13         Plaintiff argues the ALJ "merely offered conclusions and speculation" to discount FNP

14   Shannon's opinion.  (Doc. 14 at 15).  Plaintiff claims the ALJ erred by venturing that FNP

15   Shannon relied upon subjective complaints and his opinion overstates Plaintiff's limitations.  *Id*.

16   "A physician's opinion of disability premised to a large extent upon the claimant's account of his

17   symptoms and limitations may be disregarded where those complaints have been properly

18   discounted."  *Morgan v. Comm'r of Soc. Sec*, 169 F.3d 595, 602 (9th Cir. 1999).  *See Tommasetti*,

19   533 F.3d at 1041 (an ALJ's adverse credibility determination supported rejection of treating

20   physician's opinion because it was primarily based on claimant's subjective comments

21   concerning his condition); *see also Bray*, 554 F.3d at 1228 (an ALJ "need not accept the opinion

22   of any physician, including a treating physician, if that opinion is brief, conclusory, and

23   inadequately supported by clinical findings.") (quotation and citation omitted).

24         Here, the ALJ appropriately discounted FNP Shannon's opinion based on his reliance on

25   Plaintiff's subjective complaints.  A review of FNP Shannon's opinion appears to confirm the

26   opinion was based on Plaintiff's subjective allegations of pain from the October 2020 office visit.

27   As discussed below, the ALJ properly discounted Plaintiff's symptom testimony.

28         Plaintiff also asserts that "the ALJ speculated that condition of L5 radiculopathy would

1   not support FNP Shannon's opinion of Plaintiff's ability to sit or result in absences from work."

2   (Doc. 14 at 15).  Plaintiff claims this is an "alternative conclusion" and the ALJ failed to set forth

3   a detailed and thorough summary of the facts and conflicting clinical evidence.  *Id.*  Plaintiff's

4   argument is without merit.  The ALJ's citation to the record is not an "alternative conclusion."

5   Rather, the ALJ expressly acknowledged conflicting clinical evidence, evidence of only mild L5

6   radiculopathy, to discount FNP Shannon's proposed limitations.  AR at 33, 613; *C.f. Martinez v.*

7   *Kijakazi*, No. 1:21-cv-0160 JLT HBK, 2023 WL 5348335, at *3 (E.D. Cal. Aug. 21, 2023)

8   ("Although the ALJ purported to give 'some weight' to the opinion of Dr. Rios because it was

9   'consistent with the objective findings,' the ALJ did not identify the objective findings that he

10  believed contradicted the limitation to occasional reaching and handling, or specify evidence to

11  reject the findings related to fingering and feeling.").

12         Separately, Plaintiff argues the ALJ failed to explain how Plaintiff's "limited activities

13  evidences the capacity for greater exertion than identified by [FNP] Shannon."  (Doc. 14 at 15).

14  Plaintiff asserts her activities are limited to a few hours daily, over the course of the day, and do

15  not total a greater activity level than described in FNP Shannon's opinion.  *Id.*  In contrast,

16  Defendant claims FNP Shannon's "extreme limitations" were refuted by Plaintiff's activities of

17  daily living, in which Plaintiff provided that she was able to perform simple maintenance, prepare

18  meals, pay bills, care for children, and shop.  (Doc. 20 at 11) (citing AR at 33, 282-84, 528-32,

19  535-39).

20         "A conflict between a treating physician's opinion and a claimant's activity level is a

21  specific and legitimate reason for rejecting the opinion."  *Ford v. Saul*, 950 F.3d 1141, 1155 (9th

22  Cir. 2020) (citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)).  As stated above, the

23  ALJ discounted FNP Shannon's opinion because Plaintiff was "able to perform simple

24  maintenance, prepare meals, pay bills, care for children, and shop."  AR at 33.  At the hearing,

25  Plaintiff testified she is not able to assist in all of the household chores and is able to devote only

26  four hours a day for chores.  *Id.* at 62.  In 2019, Plaintiff testified she is unable to complete a task

27  without taking a break due to pain.  *Id.* at 282.  Plaintiff estimated she is taking about 10 rest

28  periods throughout the day to complete her household chores and has to complete tasks the

1   following day.  *Id*. at 282-83.  Plaintiff stated she is "only able to pick up clothes from the floor

2   and small items."  *Id*. at 283.  However, in 2018, Plaintiff reported she has no difficulty

3   completing household tasks.  *Id.* at 530, 536.

4           At the hearing, Plaintiff testified she babysits her grandchildren for up to two hours at a

5   time.  *Id*. at 54.  In 2019, Plaintiff reported she grocery shops once a week and has her children

6   help her.  *Id*. at 283.  Plaintiff noted she does yard work at most three times a week, removes

7   small weeds and waters plants as much as she can.  *Id*.  But, in 2018, Plaintiff reported she shops,

8   and "performs her own activities of daily living without assistance and walks some for exercise."

9   *Id*. at 536.  Plaintiff testified she is able to pay bills, handle cash appropriately, and care for

10  children.  *Id*. at 530.

11          The ALJ's opinion contains an unexplained inconsistency in the ALJ's treatment of

12  Plaintiff's engagement in activities of daily living.  The ALJ appears to adopt Plaintiff's daily

13  activities of life exhibited in 2018.  *Id*. at 33.  However, the ALJ fails to account for Plaintiff's far

14  more limited report of activities of daily living in 2019 and at the 2020 hearing.  As the ALJ

15  offered no basis or explanation for this inconsistency, substantial evidence does not support the

16  ALJ's reasoning on this issue.

17          **C.**      **Whether the ALJ Erred by Failing to Include Work-Related Limitations in**

18                  **the RFC Consistent with the Nature and Intensity of Plaintiff's Limitations**

19                  **and Failed to Offer Clear and Convincing Reasons for Rejecting Plaintiff's**

20                  **Subjective Complaints**

21          As discussed above, a claimant's RFC is "the most [the claimant] can still do despite [his

22  or her] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC assessment is an

23  administrative finding based on all relevant evidence in the record, not just medical evidence.

24  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In determining the RFC, the ALJ must

25  consider all limitations, severe and non-severe, that are credible and supported by substantial

26  evidence in the record.  *Id.*  However, an ALJ's RFC findings need only be consistent with

27  relevant assessed limitations and not identical to them.  *See Turner v. Comm'r of Soc. Sec*., 613

28  F.3d 1217, 1222-23 (9th Cir. 2010) ("Although the ALJ rejected any implication in Dr. Koogler's

23

1    evaluation that Turner was disabled, he did incorporate Dr. Koogler's observations into his

2    residual functional capacity determination. … These limitations were entirely consistent with Dr.

3    Koogler's limitation.").  Ultimately, a claimant's RFC is a matter for the ALJ to determine.

4    *Vertigan*, 260 F.3d at 1049.

5         Plaintiff argues the ALJ erred in assessing her RFC because she failed to set forth any

6    clear and convincing reasons for discounting Plaintiff's symptoms.  (Doc. 14 at 16).  An ALJ

7    engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain

8    or symptoms.  *Lingenfelter*, 504 F.3d at 1035-36.  The ALJ first must determine whether there is

9    "objective medical evidence of an underlying impairment which could reasonably be expected to

10   produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted).  "The

11   claimant is not required to show that this impairment could reasonably be expected to cause the

12   severity of the symptom he has alleged; he need only show that it could reasonably have caused

13   some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

14   quotation marks omitted).

15        Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the

16   ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

17   gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154,

18   1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are

19   insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

20   undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

21   1995)); *see Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with

22   findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

23   discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most

24   demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v.

25   Comm'r of Soc. Sec.*, 278 F.3d 920, 924 (9th Cir. 2002)).

26        After finding that Plaintiff's impairments could reasonably be expected to cause his

27   alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity,

28   persistence and limiting effects of his symptoms were not entirely consistent with the medical

24

1   evidence and other evidence in the record.  AR at 31.  First, the ALJ found Plaintiff sought

2   primarily conservative and routine treatment throughout the record, with medication only and

3   chiropractic care.  *Id.*  Countering this, Plaintiff argues she sought injections, was administered a

4   Toradol injection, and Dr. Rahimifar recommended right C3 and C5 transforaminal nerve blocks,

5   a C4 medial branch block bilaterally, an L2 transforaminal nerve block bilateral, and L3 epidural,

6   L4 bilateral transforaminal nerve blocks, and corticosteroid injections to the bilateral SI joints.

7   (Doc. 14 at 14) (citing AR at 593-94, 674).

8        "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony

9   regarding [the] severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)

10  (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).  Generally, Courts decline to

11  consider a claimant's sustained treatment of injections to be "conservative."  *See, e.g., Garrison*,

12  759 F.3d at 1015 n. 20 (expressing doubt that at least four epidural steroid shots administered

13  over the course of several months "qualif[ies] as 'conservative' medical treatment"); *Gilliland v.*

14  *Saul,* 821 Fed. Appx. 798, 799 (9th Cir. 2020) (finding the ALJ erred in characterizing treatment

15  as conservative where the plaintiff received "several pain medications and trigger point

16  injections"); *Oldham v. Astrue*, No. CV 09-1431-JEM, 2010 WL 2850770, at *9 (C.D. Cal. 2010)

17  (noting that injections are "performed in operation-like settings" and finding they are not a form

18  of conservative treatment when pursued over the course of several months).

19       The Court agrees with the ALJ's determination that Plaintiff's treatment was conservative.

20  Plaintiff received a single Toradol injection.  AR at 594.  While additional injections were

21  recommended (*id*. at 674), Plaintiff received no other injections.  Moreover, the record cited by

22  Plaintiff demonstrates Plaintiff was "adverse to injections."  *Id*.  Accordingly, the ALJ's

23  determination of conservative treatment was supported by substantial evidence.  *Woods*, 32 F. 4th

24  at 794 (affirming ALJ's discounting of subjective testimony based on "very conservative"

25  treatment of mostly medication alone and a knee injection); *Walter v. Astrue*, No. EDCV 09-1569

26  AGR, 2011 WL 1326529, at *3 (C.D. Cal. April 6, 2011) (ALJ permissibly discredited claimant's

27  allegations based on conservative treatment consisting of Vicodin, physical therapy, and an

28  injection).

1    Next, Plaintiff claims the ALJ offered only a summary of diagnostic findings but failed to

2    identify the testimony she or he finds not to be credible, and failed to state why these findings

3    undermine Plaintiff's degree of pain.  (Doc. 14 at 17).  The Court disagrees.

4    The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the

5    claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."

6    *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22,

7    2023), *F&R adopted*, 2023 WL 5109769 (E.D. Cal. Aug. 8, 2023); *see Record v. Kijakazi*, No.

8    1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's

9    decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court

10   will still defer to the ALJ's decision.") (quoting *Wilson v. Berryhill*, 757 Fed. Appx. 595, 597 (9th

11   Cir. 2019)).  "The standard isn't whether our court is convinced, but instead, whether the ALJ's

12   rationale is clear enough that it has the power to convince."  *Smartt v. Kijakazi*, 53 F. 4th 489, 494

13   (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

14   Here, the ALJ summarized Plaintiff's testimony regarding her impairments (AR at 27-28),

15   then detailed the evidence—including Plaintiff's reports of improvement with treatment,

16   diagnostic findings, medical opinions, and conservative treatment—that the ALJ deemed

17   contradicted Plaintiff's symptom testimony.  *Id*. at 28-31; *see Ware v. Comm'r of Soc. Sec.*, 439

18   F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication

19   are not disabling for the purposes of determining eligibility for SSI benefits."); *Rollins*, 261 F.3d

20   at 857 ("the medical evidence is still a relevant factor in determining the severity of the

21   claimant's pain and its disabling effects.").  The ALJ sufficiently explained her reasons for

22   discounting Plaintiff's symptom testimony, and the Court can easily follow her reasoning and

23   meaningfully review those reasons.  *Guthrie v. Kijakazi*, 2022 WL 15761380, at *1 (9th Cir. Oct,

24   28, 2022) (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (stating that the court

25   considers "the ALJ's full explanation" and the "entire record")); *see Mazon v. Comm'r of Soc.*

26   *Sec.*, No. 1:22-cv-00342-SAB, 2023 WL 3177797, at *7 (E.D. Cal. May 1, 2023) (the ALJ's

27   sequence of summarizing evidence followed by giving specific findings, followed a conventional

28   organization for the ALJ decision writing which is sufficiently clear for judicial review).

1    Thus, the ALJ cited clear, convincing reasons supported by substantial evidence for

2    rejecting Plaintiff's symptom testimony.

3                                    **V.    REMAND**

4        The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g)

5    or to order immediate payment of benefits is within the discretion of the district court.  *Harman v.*

6    *Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an

7    administrative agency determination, the proper course is to remand to the agency for additional

8    investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v.*

9    *Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

10

11       (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
         (2) there are no outstanding issues that must be resolved before a determination of
12       disability can be made, and (3) it is clear from the record that the ALJ would be required
         to find the claimant disabled were such evidence credited.

13

14   *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is

15   directed where no useful purpose would be served by further administrative proceedings, or

16   where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396,

17   1399 (9th Cir. 1998).

18       Here, the ALJ failed to address the functional limitations identified by Dr. Vanderhyde

19   and failed to sufficiently explain how Plaintiff's activities of daily living are in tension with FNP

20   Shannon's proposed limitations.  Because these issues could be resolved before determining the

21   existence of disability, the Court finds that remand is warranted.

22                          **VI.    CONCLUSION AND ORDER**

23       As set forth above, the Court finds that the ALJ erred by (1) failing to address the

24   functional limitations identified by Dr. Vanderhyde, and (2) failing to articulate a basis for

25   inconsistent consideration of Plaintiff's engagement in activities of daily living in finding FNP

26   Shannon's opinion unpersuasive.

27   / / /

28   / / /

1    Accordingly, based on the foregoing, IT IS HEREBY ORDERED:

2        1.  Plaintiff's motion for summary judgment (Doc. 14) is GRANTED;

3        2.  The decision of the Commissioner is reversed, and the matter is REMANDED for

4            further proceedings consistent with this Order pursuant to sentence four of 42

5            U.S.C. § 405(g); and

6        3.  The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Irma

7            Casillas De Magana and against Defendant Martin O'Malley, Commissioner of

8            Social Security.

9  IT IS SO ORDERED.

10    Dated:   **February 28, 2024**

11                                              UNITED STATES MAGISTRATE JUDGE